*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 25, 2024

Plaintiff-Appellee,

v

No. 366970
Genesee Circuit Court
LC No. 22-049373-FH

BENJAMIN OTTO ANDERSON,

Defendant-Appellant.

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals as on leave granted[1] the trial court's order denying his motion to quash his bindover on one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration accomplished through force or coercion). On appeal, defendant argues that the district court abused its discretion when it bound over defendant for trial because no evidence was presented at the preliminary examination to support the court's determination that there was probable cause to find that defendant accomplished sexual penetration of the complainant by force or coercion. We affirm.

## I. BACKGROUND

The charge in this case arises out of defendant's alleged sexual conduct with the complainant, his stepdaughter, who was 19 years old at the time. At the preliminary examination, complainant testified that defendant was married to her mother and had been her stepfather for her entire life. The complainant called defendant "dad," and defendant took a parental role in her life, attending school functions, taking her to the doctor, and participating in parent-teacher conferences. Defendant had financed complainant's car, and complainant was in the process of

---

[1] *People v Anderson*, 513 Mich 1023 (2024).

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

repaying defendant when the alleged conduct occurred. Defendant and complainant's mother were separated at the time of the alleged conduct, and complainant lived with defendant.

The complainant testified that in September 2020, she arrived at defendant's house late at night and was alone with him in the house. While complainant was upset and talking to defendant, defendant began kissing her. Complainant explained that she was "in shock" and did not respond to defendant or kiss him back. Defendant then began taking off complainant's pants and told her, "[L]et's go upstairs." The complainant pulled her pants up and followed defendant up to her bedroom. In her bedroom, defendant took off complainant's pants again and performed oral sex on her. Complainant did not resist and tried to remain calm during the sexual conduct because she "just wanted it to be over" and "didn't really know what to do."

After the alleged sexual conduct occurred, complainant testified that defendant told her that she would not have to pay defendant for her car anymore because they had a "new, different relationship now." Defendant later told complainant not to go to the police about the sexual conduct because it would "ruin his life forever for no reason." The complainant disclosed the alleged sexual conduct to her mother and therapist before going to the police several months later. Complainant acknowledged that she asked defendant for money to repair or maintain her car several times after the alleged sexual conduct, and she acknowledged that she went to the police with her allegations when defendant stopped helping her financially.

The district court bound over defendant, and the circuit court denied defendant's motion to quash the bindover. Defendant now appeals, contending that there was no evidence presented at the preliminary examination to support the force-or-coercion element of CSC-III in MCL 750.520d(1)(b). As a result, defendant argues that the district court abused its discretion when it bound him over for trial on the CSC-III charge.

## II. ANALYSIS

"In reviewing a district court's decision to bind over a defendant, the lower court's determination regarding the sufficiency of the evidence is reviewed for an abuse of discretion, but the lower court's rulings based on questions of law are reviewed de novo." *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). When reviewing a bindover decision, the circuit court "must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court." *People v Henderson*, 282 Mich App 307, 312-313; 765 NW2d 619 (2009). We review a district court's bindover decision for abuse of discretion. *People v Anderson*, 501 Mich 175, 182, 190; 912 NW2d 503 (2018) (quotation marks and citation omitted).

The purpose of a preliminary examination is to determine whether a felony has been committed, and, if so, whether there is probable cause for charging the defendant. *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010). "At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial." *People v Fairey*, 325 Mich App 645, 648-649; 928 NW2d 705 (2018). "To satisfy this burden, the

prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred." *Id*. at 649. The probable-cause standard is less demanding than the guilt-beyond-a-reasonable-doubt standard, requiring "a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). When a magistrate has determined that probable cause exists, the "magistrate may not decline to bind over a defendant where there is a conflict of evidence, or where there is a reasonable doubt as to his guilt; all such questions should be left for the jury upon the trial." *Anderson*, 501 Mich at 185 (quotation marks and citation omitted).

Defendant was charged with CSC-III under a force-or-coercion theory, as stated in MCL 750.520d(1)(b), which provides:

> A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> \* \* \*
>
> (b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (v).[2]

Under MCL 750.52b(1)(f), force or coercion includes, but is not limited to, any of the following circumstances:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.
>
> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

---

[2] MCL 750.520d was amended by 2023 PA 126, effective September 27, 2023, to reflect the Legislature's recent prohibition of marriage for individuals under 18 years of age and to make stylistic changes to subsections (e)(*ii*) and (f)(*ii*). The portion of the statute that applies in this case ("[f]orce or coercion is used to accomplish the sexual penetration") was not substantively changed by the amendment.

(*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

The existence of force or coercion in a sexual assault is to be "determined in light of all of the circumstances and is not limited to acts of physical violence." *People v Green*, 313 Mich App 526, 539; 884 NW2d 838 (2015) (quotation marks and citation omitted). "Force or coercion" exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice for a valid reason. *People v Eisen*, 296 Mich App 326, 335; 820 NW2d 229 (2012). In its discussion of "force," our Supreme Court has explained that "the prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). "Force" for purposes of the statute does not include the "physical interaction that would be inherent in an act of sexual penetration" or the "nonviolent physical interaction in a mechanical sense that is merely incidental to an act of sexual penetration," and it does not require that force must be "so great as to overcome the complainant." *Id*. Further, in a prosecution for first-degree criminal sexual conduct (CSC-I) or CSC-III, "[a] victim need not resist the actor," MCL 750.520i, and "[t]he testimony of a victim need not be corroborated," MCL 750.520h.

In our previous discussions of "coercion," we have explained that coercion "may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse." *Green*, 313 Mich App at 539 (quotation marks and citation omitted). A defendant's position of authority over a victim is also a relevant consideration, and coercion may exist when a defendant abuses his position of authority to compel a vulnerable victim to submit to sexual contact. *Id*. at 540. A defendant does not need to hold a formal position of power over a victim in order to abuse their authority. *People v Reid*, 233 Mich App 457, 472; 592 NW2d 767 (1999). Further, the location where a sexual assault occurred may be a factor in determining whether coercion existed. See *People v Kline*, 197 Mich App 165, 167; 494 NW2d 756 (1992) (noting that the defendant sexually assaulted the complainant, his 16-year-old stepdaughter, in a basement where she was isolated from help).

Defendant argues that the complainant's subjective feelings about the alleged sexual conduct were not evidence of force or coercion. Defendant also argues that the complainant's lack of resistance to defendant's advances and the complainant's act of following defendant upstairs constituted "passive acquiescence" to defendant's actions. While the facts of this case do not include the possible scenarios of force or coercion listed in MCL 750.520b(1)(f)(*i*) through (*v*), this list is not exhaustive. *Green*, 313 Mich App at 539. When considering the totality of the circumstances in this case, we conclude that there was probable cause to find that defendant sexually penetrated the complainant using coercion.

The testimony presented at defendant's preliminary examination established that defendant had been complainant's stepfather and primary father figure for most of her life. Complainant

-4-

called defendant "dad," and defendant took on the role and responsibilities of a parent in her life. Defendant provided the complainant with housing and financed her car, even after defendant and the complainant's mother separated. A reasonable fact-finder could conclude that defendant held a position of authority and trust in complainant's life that could be abused because of his role as her stepfather and father figure. See *Reid*, 233 Mich App at 472.

The complainant testified that she arrived at defendant's house late at night, upset, and not "fully coherent and there" because she had taken a Xanax. While alone with defendant in his house, he began kissing her and pulled down her pants. When complainant pulled her pants back up and followed defendant upstairs to her bedroom, defendant again removed her pants and performed oral sex on her. During the incident, complainant did not resist or tell defendant to stop because she "just wanted it to be over" and did not know "how to stop it especially since he was [her] dad [her] whole life." After the incident, defendant told complainant that their relationship was "different" now and told her that she no longer had to repay him for her car. Defendant also told complainant not to contact the police and "ruin his life forever for no reason." Complainant explained that she waited to disclose the incident because she did not want her mother to be ashamed of her and because she was concerned about how the disclosure would affect her half-sister, who was defendant's daughter. In light of all the circumstances, a person of ordinary prudence and caution could conscientiously entertain a reasonable belief that defendant used force or coercion to sexually penetrate the complainant. See *Yost*, 468 Mich at 126.

Defendant's "passive acquiesce" argument focuses on complainant's failure to resist defendant's advances and her action of following defendant up the stairs to her bedroom. However, the absence of resistance by complainant is not evidence that she consented to defendant's sexual acts, and evidence of her resistance to defendant or lack of consent is not necessary to prosecute him for CSC-III. See MCL 750.520i. Further, defendant's examples of complainant's acquiescence are presented in isolation, ignoring the totality of the circumstances and focusing only on the act of following defendant up the stairs or the failure to resist. See *Green*, 313 Mich App at 539. Defendant does not evaluate complainant's lack of resistance or act of following defendant upstairs in light of the fact that complainant was alone in defendant's house, that she did not kiss defendant back, or that she pulled her pants up after defendant pulled them down. Defendant's argument also does not consider that defendant provided complainant with housing, that complainant was indebted to defendant for her car, or that defendant had been complainant's "dad" for her entire life. In the full context of defendant's case, complainant's alleged passivity could reasonably be viewed as evidence that she felt compelled to do with defendant what she would not have done under her own free will. See *id*.

We conclude that probable cause existed that defendant sexually penetrated complainant by the use of force or coercion in light of the testimony presented at the preliminary examination. Therefore, the district court did not abuse its discretion when it bound over defendant on the charge of CSC-III, and the circuit court did not err by denying defendant's motion to quash the bindover.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer